AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California



**FILED**

MAY 0 3 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of: )<br>Nine cellular telephones and one digital video )<br>recorder seized by the Drug Enforcement )<br>Administration in Sacramento, California, on )<br>March 15, 2018, as further described in Attachment )<br>A. ) | Case No.<br><br>2:18-SW-  412  CKD |

## APPLICATION FOR A SEARCH WARRANT

I, Maxim Lashchuk, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**See ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ **Eastern** _____ District of _____ **California** _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**See ATTACHMENT B, attached hereto and incorporated by reference.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Conspiracy to distribute and to possess with intent to distribute controlled substances. |
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute controlled substances. |
| 21 U.S.C. § 843 | Use of a communications device to facilitate a drug-trafficking offense. |

The application is based on these facts:

**See Affidavit of DEA Special Agent Maxim Lashchuk, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Maxim Lashchuk, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ May 3, 2018 _____

*Judge's signature*

City and state: _____ Sacramento, California _____          Hon. Carolyn K. Delaney, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH ELECTRONIC DEVICES

I, Maxim Lashchuk, being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the forensic examination of property (i.e., the electronic devices further described in Attachment A), which is currently in law enforcement possession, and the extraction from that property of electronically stored information further described in Attachment B.

2.     I am a Special Agent with the U.S. Drug Enforcement Administration ("DEA") and have been so employed since September 2014.  After I was hired, I completed five months of DEA Basic Agent training at the DEA's Training Academy in Quantico, Virginia, where I received specialized training in narcotics investigations, to include training in the Controlled Substance Act, search and seizure law, drug identification, drug-trafficking trends and methods, evidence gathering, report writing, money laundering investigation, undercover operations, physical and electronic surveillance, and asset forfeiture.  After completing Basic Agent training, I was assigned to the DEA's Sacramento District Office.

3.     As a DEA Special Agent, I have participated in and led investigations targeting individuals involved in trafficking of controlled substances, specifically heroin, methamphetamine, cocaine, and crack cocaine.  Through my training, experience, and interaction with other experienced Special Agents, I have encountered and become familiar with various tools, methods, trends, paraphernalia, and related articles used by drug traffickers and drug trafficking organizations in their efforts to import, store, conceal, transport, manufacture, and distribute controlled substances.  The conclusions and opinions set forth below are based on my experience and training as a DEA Special Agent, my personal observations during this investigation, and conversations I had with other law enforcement officers who are familiar with the facts and circumstances of this investigation.

4.     The information contained in this Affidavit is based on my review of the reports and files in this case, conversations with other law enforcement personnel, and my own personal knowledge.

5.     Since this Affidavit is intended to show only that there is sufficient probable cause for the requested warrant, it does not detail all of my knowledge about this investigation, only that which I believe to be pertinent to the requested search of the Devices described below.

/ / /

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6.     The property to be searched consists of nine cellular telephones and one digital
video recorder ("the Devices"), described below:

   a) LG Model VS425LPP Smartphone, black in color, IMEI: 355156090296386
   b) LG Model LGMP260 Smartphone, black in color, IMEI: 355266084147196
   c) ZTE Model Z899VL, Smartphone, black in color, IMEI: 990008865361203
   d) Apple iPhone Smartphone, black in color, black case, unable to get IMEI
   e) Apple iPhone Smartphone, black in color, gray case, unable to get IMEI
   f) SWAN Digital Video Recorder, Serial Number 281720203151835
   g) Apple iPhone Model A1661 Smartphone, black in color, unable to get IMEI
   h) Apple iPhone Model A1661 Smartphone, black in color, unable to get IMEI
   i) BLU Model Zoey Flex flip phone, black/white in color, IMEI:
      355147081440687
   j) LG Model LS676 Smartphone, white in color, MEID: 089917082402384217,
      S/N: 708CYFT2250155

7.     The Devices are currently in the DEA's custody in Sacramento, California.

8.     The applied-for-warrant would authorize the forensic examination of the Devices
for the purpose of identifying electronically-stored data particularly described in
Attachment B.

## PROBABLE CAUSE

9.     In late-September 2017, I received detailed information from a confidential
source (CS) about a group of individuals working together to distribute large
amounts of cocaine, crack cocaine, and methamphetamine in the Sacramento area.
Over the course of several interviews, the CS told me that Andre Ramon
WASHINGTON was distributing controlled substances from his home located at
938 Los Robles Blvd, Sacramento, California ("WASHINGTON's home") and
that WASHINGTON was mainly supplied by two Hispanic male adults. The CS
said that the Hispanic males regularly dropped off pound and kilogram quantities
of narcotics to WASHINGTON's home and then returned later to collect the
proceeds generated from the sales of those narcotics.

10.    Based on this information, I opened an investigation and began surveillance of
WASHINGTON, and was able to independently verify the information provided
by the CS. From November 2017 through March 14, 2018, I conducted
surveillance of WASHINGTON's home with the use of a covertly installed video
camera, and I observed high-volume foot traffic at WASHINGTON's home.
During this time period, I consistently observed subjects arrive at
WASHINGTON's home during various times of the day and then leave just
minutes later. Based on my training and experience, I know that this type of foot-
traffic is consistent with houses used for drug distribution.

2

11.     The CS provided a cellular telephone number for WASHINGTON and said that
        WASHINGTON used this number to conduct drug transactions and communicate
        with his customers and sources of supply.  Toll records obtained from Verizon for
        this number showed that it was a "TracFone" (a prepaid wireless phone, also
        known as a "burner" phone) with no subscriber information.  Toll analysis
        showed that this number was in contact with multiple phone numbers known by
        the DEA to be used by convicted drug traffickers in California and Nevada.
        During the course of this investigation approximately six phone numbers were
        identified to be used by WASHINGTON as he frequently changed his phone
        numbers, which is common practice among drug traffickers to avoid detection and
        interception by law enforcement.

12.     From November 2017 to March 14, 2018, I observed Roland Adrian JUFIAR, a
        Hispanic male matching the description provided by the CS, routinely arrive at
        WASHINGTON's home, sometimes with a package in hand, and then leave
        without the package only minutes later.  After these visits, I routinely observed
        JUFIAR return to WASHINGTON's home later, walk inside, and then leave
        within minutes.  Based on my training, experience, the information provided to
        me by the CS, and observations in this investigation, I believe that JUFIAR was
        delivering narcotics to WASHINGTON and then arriving to collect the drug
        proceeds from WASHINGTON.  I showed photographs of JUFIAR to the CS and
        the CS tentatively identified JUFIAR as one of the Hispanic males who supplied
        WASHINGTON.  Through surveillance, I learned that JUFIAR lived at 845
        Regatta Drive, Sacramento, California ("JUFIAR's home").

13.     After conducting surveillance of WASHINGTON and JUFIAR, I identified David
        Garcia ROMERO, whose photograph the CS positively identified as the second
        Hispanic male who supplied WASHINGTON.  Court authorized vehicle trackers
        installed on JUFIAR's vehicles showed that JUFIAR regularly stopped by
        ROMERO's home (551 Bowman Avenue, Sacramento, California) before
        delivering packages of suspected narcotics to WASHINGTON's home.  This
        observation led me to believe that JUFIAR was obtaining the narcotics from
        ROMERO and then delivering them to WASHINGTON.  Further, phone toll
        analysis of JUFIAR's and ROMERO's phone numbers showed that they were in
        frequent contact with each other.

14.     On March 2, 2018, United States Magistrate Judge Edmund F. Brennan, Eastern
        District of California, signed six separate search warrants authorizing law
        enforcement to search WASHINGTON, JUFIAR, and ROMERO, their homes,
        personal property, and vehicles under their control.

## Execution of Federal Search Warrant at WASHINGTON's Home

15.     On March 15, 2018, at around 6:00 a.m., a federal search warrant was executed at
        WASHINGTON's home.  When agents entered the home, agents found
        WASHINGTON in one of the home's bathrooms, flushing what appeared to be

cocaine down the toilet drain. Further, agents located a cocaine-to-crack cocaine conversion operation in WASHINGTON's attached garage. Numerous packages containing suspected cocaine residue were located on the table where suspected crack cocaine was drying on napkins. Approximately 629 grams of suspected cocaine, 391 grams of suspected crack cocaine, 998 grams of suspected crystal methamphetamine, 14 pounds of processed marijuana, digital scales, a digital money counter, drug ledgers, and a firearm were seized from WASHINGTON's home. WASHINGTON told agents that he had nothing to say and wanted to go to jail immediately. WASHINGTON was arrested and subsequently charged with violations of Title 21, United States Code, Section § 841(a)(1) and 846, Possession with Intent to Distribute and Conspiracy to Distribute a Controlled Substance, and Title 18, United States Code, Section 922(g), Felon in Possession of a Firearm.

16.     WASHINGTON's girlfriend, Angela MARSHALL, and WASHINGTON's juvenile son were also present in the residence. I asked MARSHALL and WASHINGTON's son to point out their cellular telephones, which they did, and agents did not seize the phones that they claimed ownership of. The following cellular telephones were located and seized from WASHINGTON's home, which no one else present in the house claimed to have owned. It should be noted that agents identified approximately six different phone numbers used by WASHINGTON during this investigation, therefore I believe that WASHINGTON had and was using multiple cellular phones:

a)   LG Model VS425LPP Smartphone, black in color, IMEI: 355156090296386
b)   LG Model LGMP260 Smartphone, black in color, IMEI: 355266084147196
c)   ZTE Model Z899VL, Smartphone, black in color, IMEI: 990008865361203
d)   Apple iPhone Smartphone, black in color, black case, unable to get IMEI

**Execution of Federal Search Warrant at JUFIAR's Home**

17.     On the same day, at around 7:10 a.m., a federal search warrant was executed at JUFIAR's home. JUFIAR was present along with his wife, Jennifer JUFIAR, and two juveniles. JUFIAR was detained and read his *Miranda* rights. Agents showed JUFIAR the search warrant and surveillance photos of JUFIAR visiting WASHINGTON's residence, and explained that agents believed JUFIAR and ROMERO were supplying WASHINGTON with cocaine and methamphetamine. JUFIAR did not deny anything and nodded several times while looking at the photographs of himself at WASHINGTON's place and of WASHINGTON's and ROMERO's photos. When asked if there were any drugs present in the house, JUFIAR stated that agents would find everything that he had and that he knew that he was going to jail, therefore, he didn't want to say anything further until he talks to his attorney who he already had on retainer.

18.     During the search of the JUFIAR's home, agents located and seized approximately 160 grams of cocaine which was pressed and appeared to be the

remaining amount from a kilogram brick of cocaine. Further agents seized approximately 11.6 pounds of marijuana, $15,380 US currency, a digital money counter, and a gold/diamond Rolex watch. The three vehicles that JUFIAR used to deliver packages of suspected narcotics to WASHINGTON's home were all present in the driveway and a trained narcotics detection canine was deployed to search the vehicles. The canine positively alerted to the odor of narcotics emanating from the center console and the front passenger seat areas of all three vehicles. I believe that the narcotics canine was alerting to the odor left behind by the drug packages which I observed JUFIAR regularly deliver to WASHINGTON's home on numerous occasions. JUFIAR was arrested and subsequently charged with violating Title 21, United States Code, Sections 841(a)(1) and 846, Possession with Intent to Distribute and Conspiracy to Distribute a Controlled Substance.

19. JUFIAR's wife denied knowing of any drugs being present in the home and had her cellular telephone with her which agents did not seize. Agent's located and seized the following cellular phone believed to be used by JUFIAR, and a Digital Video Recorder (DVR) which was connected to the video surveillance system installed around the home:

   e) Apple iPhone Smartphone, black in color, gray case, unable to get IMEI
   f) SWAN Digital Video Recorder, Serial Number 281720203151835

**Execution of Federal Search Warrant of ROMERO's Vehicle and Home**

20. While agents were executing search warrants at WASHINGTON's and JUFIAR's homes, surveillance was also maintained of ROMERO's home. At approximately 7:55 a.m., officers and agents observed ROMERO's vehicle leave his home and travel in the direction of JUFIAR's home. A vehicle stop was conducted on ROMERO's vehicle only a block away from JUFIAR's home. ROMERO was the sole occupant and driver of the vehicle. A further search of the vehicle revealed that ROMERO had several bags in the trunk area which contained approximately 37.7 pounds of methamphetamine, 2.7 kilograms of cocaine, one pound of suspected crack cocaine, three handguns (one with an altered serial number and a suppressor), $19,430 in US Currency, a digital money counter, and a digital scale. ROMERO was arrested and subsequently charged with violating Title 21, United States Code, Sections 841(a)(1) and 846, Possession with Intent to Distribute and Conspiracy to Distribute a Controlled Substance, and Title 18, United States Code, Section 924(c) Possession of a Firearm in Furtherance of a Drug Crime.

21. The following cellular telephones were located and seized from the vehicle—cellphone (g) was in the bag with the drugs, money, and guns, and cellphone (h) was on ROMERO's person:

   g) Apple iPhone Model A1661 Smartphone, black in color, unable to get IMEI
   h) Apple iPhone Model A1661 Smartphone, black in color, unable to get IMEI

22.    Following the vehicle stop, a search warrant was executed at ROMERO's home where his girlfriend Cheriee TAGATA was located. TAGATA had her own cellphone which was not seized. In the home, agents located a large floor safe which contained notebooks with pay/owe sheets. A narcotics canine positively alerted to the odor of narcotics emanating from the safe. The large safe further contained another smaller safe which contained the following cellular phones next to numerous indicia of ROMERO to include a California driver's license:

    i)   BLU Model Zoey Flex phone, black/white in color, IMEI: 355147081440687
    j)   LG Model LS676 Smartphone, white in color, MEID: 089917082402384217, S/N: 708CYFT2250155

23.    Based on my experience with this investigation, and the timing of the searches and the events that unfolded, I believe that ROMERO likely learned that WASHINGTON's home (at 6:00 a.m.) and JUFIAR's home (at 7:10 a.m.) were being searched by law enforcement, and that prompted ROMERO to leave his home with all the narcotics and firearms in case law enforcement came to search his (ROMERO's) home too. I note that ROMERO's vehicle was stopped and searched just after 8:00 a.m.

24.    The Devices are currently in the DEA's custody at the Sacramento District Office located at 4328 Watt Avenue, Sacramento, California.

25.    Based on my training and experience, and from what I have learned by consulting other agents, I know that mobile telephones:

- preserve in their memory a history of incoming, outgoing, and missed calls;
- contain in their memory a telephone book, which allows the user to store numbers and other contact information;
- contain in their memory text messages sent, received, and drafted by the user;
- have a voicemail function that allows callers to leave messages when the user does not answer;
- contain other user-entered files such as "to-do" lists, which can provide evidence of a crime;
- contain photographic data files, which can be evidence of criminal activity when the user took pictures of evidence of crime.

26.    Mobile telephone companies also store the data described in the above-paragraph on their own servers and associate the data with particular users' mobile telephones. In addition, all of these functions are can be found on a "smart" phone or similar handheld device, as well as evidence of email communications.

27. Because there is probable cause to believe that WASHINGTON, JUFIAR, and ROMERO possessed the controlled substances seized on March 15, 2018 with the intent to distribute them, and conspired to do the same, in violation of 21 U.S.C. §§ 841(a)(1) and 846, I submit there is also probable cause to believe that information and records relating to these activities will be found stored in the Devices seized and processed into evidence on that date, and in particular, will contain evidence of the types described in Attachment B.

28. Based on my training and experience as a DEA Special Agent, I know that drug traffickers frequently use cell phones to facilitate their narcotics-trafficking activities. Specifically, cell phones are used to call and text suppliers, customers, associates, and partners to facilitate the purchase, packaging, transportation, and sale of illicit substances. Address books and contact lists often include the names, monikers, and contact information for individuals and businesses that are involved in criminal activity. Furthermore, cellular phones are equipped with digital cameras, and therefore often contain photographs and videos taken by individuals involved in drug trafficking, including "trophy" photographs of contraband, to include narcotics, cash, firearms, and other photographs of associates and business partners.

29. I also know that people who traffic in narcotics usually negotiate or discuss the particulars of their transactions, to include the price, the volume of drugs involve, and the meeting location, in advance of any transaction. Moreover, it has been my experience that these negotiations and discussions most frequently take place by way of phones, emails, and/or text messages. I know that cellular telephones are commonly referred to as tools of the drug trade.

30. Given my training and experience, I also believe that, based on the extraordinary amount of controlled substances recovered in this case, and methamphetamine in particular—approximately 41 pounds from ROMERO's vehicle—I would expect that WASHINGTON, JUFIAR, and/or ROMERO would have used their cellular phones at some point in the days or weeks preceding March 15, 2018, to negotiate or discuss the details of the transaction from whomever supplied the drugs to them, or their intended distribution of the controlled substances.

31. The Devices are currently in DEA's custody in Sacramento, California, and they have been in law enforcement's possession since they were processed into evidence on March 15, 2018. Based on my training and experience, I know the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into law enforcement's possession.

## TECHNICAL TERMS

32. Based on my training and experience, I use the following technical terms to convey the following meanings:

7

a)  Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of all calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading form the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b)  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c)  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDSs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

33.  Based on my training, experience, and research, I know that the devices have the capability to allow them to serve as wireless telephone, digital camera, and PDA. In my training and experience, examining data stored on devices of this type can

uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

34.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.

35.     <u>Forensic evidence.</u> As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were sued, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

- Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

- Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

- A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

- Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes is necessary to establish that a particular thing is not present on a storage medium.

36.     <u>Nature of examination.</u> Based on the forging, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

37.     <u>Manner of execution.</u> Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

38.     Based on the foregoing, I submit that this Affidavit supports probable cause for a search warrant authorizing the forensic examination of the Devices described in Attachment A, to seek the items described in Attachment B.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Maxim Lashchuk
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me on May 3, 2018.

Hon. Carolyn K. Delaney
United States Magistrate Judge

Approved as to form:

Timothy H. Delgado
Assistant United States Attorney

10

**Attachment A**

The property to be searched is:

a)   LG Model VS425LPP Smartphone, black in color, IMEI: 355156090296386
b)   LG Model LGMP260 Smartphone, black in color, IMEI: 355266084147196
c)   ZTE Model Z899VL, Smartphone, black in color, IMEI: 990008865361203
d)   Apple iPhone Smartphone, black in color, black case, unable to get IMEI
e)   Apple iPhone Smartphone, black in color, gray case, unable to get IMEI
f)   SWAN Digital Video Recorder, Serial Number 281720203151835
g)   Apple iPhone Model A1661 Smartphone, black in color, unable to get IMEI
h)   Apple iPhone Model A1661 Smartphone, black in color, unable to get IMEI
i)   BLU Model Zoey Flex flip phone, black/white in color, IMEI: 355147081440687
j)   LG Model LS676 Smartphone, white in color, MEID: 089917082402384217,
     S/N: 708CYFT2250155

This warrant authorizes the forensic examination of the devices for the purpose of identifying the electronically stored information described in Attachment B.

**Attachment B**

1. All records on the devices described in Attachment A that relate to violations of 21 U.S.C. 841(a)(1), 846, and 843 and involve Andre Ramon WASHINGTON, Roland Adrian JUFIAR, David Garcia ROMERO, and their co-conspirators including:

   a)  Lists of customers and related identifying information;

   b)  Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c)  Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d)  Any information recording Andre Ramon WASHINGTON, Roland Adrian JUFIAR, David Garcia ROMERO, and their co-conspirators schedule or travel from January 1, 2017 to present;

   e)  All bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including text messages, voicemail messages or voice notes, any form of computer or electronic storage (such as flash memory or other media that can store data), videos, and any photographic form.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of: ) | |
| ) | |
| Nine cellular telephones and one digital video recorder ) | Case No. |
| seized by the Drug Enforcement Administration in ) | |
| Sacramento, California, on March 15, 2018, as further ) | 2: 1 8 - SW -  4 1 2   **CKD** |
| described in Attachment A.                                    ) | |
| ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ EASTERN _____ District of _____ CALIFORNIA _____
*(identify the person or describe the property to be searched and give its location)*:

**See ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**See ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ May 17, 2018 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to:  any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  5/3/2018  10:14 am          _____
                                                                              *Judge's signature*

City and state:     Sacramento, California          Hon. Carolyn K. Delaney, U.S. Magistrate Judge
                                                                            *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____     _____
Signature of Judge                                        Date

## **Attachment A**

The property to be searched is:

a)    LG Model VS425LPP Smartphone, black in color, IMEI: 355156090296386
b)    LG Model LGMP260 Smartphone, black in color, IMEI: 355266084147196
c)    ZTE Model Z899VL, Smartphone, black in color, IMEI: 990008865361203
d)    Apple iPhone Smartphone, black in color, black case, unable to get IMEI
e)    Apple iPhone Smartphone, black in color, gray case, unable to get IMEI
f)    SWAN Digital Video Recorder, Serial Number 281720203151835
g)    Apple iPhone Model A1661 Smartphone, black in color, unable to get IMEI
h)    Apple iPhone Model A1661 Smartphone, black in color, unable to get IMEI
i)    BLU Model Zoey Flex flip phone, black/white in color, IMEI: 355147081440687
j)    LG Model LS676 Smartphone, white in color, MEID: 089917082402384217,
       S/N: 708CYFT2250155


This warrant authorizes the forensic examination of the devices for the purpose of identifying the electronically stored information described in Attachment B.

11

**Attachment B**

1.      All records on the devices described in Attachment A that relate to violations of
        21 U.S.C. 841(a)(1), 846, and 843 and involve Andre Ramon WASHINGTON,
        Roland Adrian JUFIAR, David Garcia ROMERO, and their co-conspirators
        including:

      a)      Lists of customers and related identifying information;

      b)      Types, amounts, and prices of drugs trafficked as well as dates, places, and
        amounts of specific transactions;

      c)      Any information related to sources of drugs (including names, addresses,
        phone numbers, or any other identifying information);

      d)      Any information recording Andre Ramon WASHINGTON, Roland
        Adrian JUFIAR, David Garcia ROMERO, and their co-conspirators
        schedule or travel from January 1, 2017 to present;

      e)      All bank records, checks, credit card bills, account information, and other
        financial records.

2.      Evidence of user attribution showing who used or owned the devices at the time
        the things described in this warrant were created, edited, or deleted, such as logs,
        phonebooks, saved usernames and passwords, documents, and browsing history;

3.      As used above, the terms "records" and "information" include all of the foregoing
        items of evidence in whatever form and by whatever means they may have been
        created or stored, including text messages, voicemail messages or voice notes, any
        form of computer or electronic storage (such as flash memory or other media that
        can store data), videos, and any photographic form.

12